**\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER\*\***

**Electronically Filed
Supreme Court
SCWC-22-0000698
07-AUG-2026
10:06 AM
Dkt. 50 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I,
Petitioner/Plaintiff-Appellee,

vs.

CURTIS RYAN BEKKUM,
Respondent/Defendant-Appellant.

_____

SCWC-22-0000698

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000698; CASE NO. 2CPC-22-0000240)

August 7, 2026

DEVENS, C.J., McKENNA, EDDINS, AND GINOZA, JJ., AND
CIRCUIT JUDGE MALINAO, IN PLACE OF RECKTENWALD, C.J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

Defendant Curtis Ryan Bekkum ("Bekkum") was convicted by a jury on two counts of sexual assault in the fourth degree for engaging in sexual contact by "compulsion."  Hawai'i Revised Statutes ("HRS") § 707-700 (2014), defines "compulsion" as "absence of consent, or a threat, express or implied, that

places a person in fear of public humiliation, property damage, or financial loss."  The State of Hawaiʻi ("the State") prosecuted the charges on the grounds the complaining witness ("CW") had not consented to the sexual contact engaged in by Bekkum.

On appeal, Bekkum asserted for the first time that the charges against him were fatally defective because they did not include the statutory definition of compulsion.  The Intermediate Court of Appeals ("ICA") agreed and reversed the convictions, ruling that the omission of the statutory definition from the charges failed to provide Bekkum with fair notice of the charges against him.  The ICA addressed some but not all of Bekkum's other points of error on appeal.  We granted the State's application for certiorari regarding the validity of the charges.

We seek to clarify our case law governing the validity of charges depending on when they are challenged, which has used language that can cause confusion.  At bottom, when a defendant challenges the sufficiency of charges for the first time on appeal, the charges are presumed valid and a conviction is not to be reversed unless the defendant can show (1) the defendant was prejudiced; or (2) the charge cannot reasonably be construed to charge a crime ("the Motta/Wells rule").  State v. Brown, 157 Hawaiʻi 354, 384, 577 P.3d 1045, 1075 (2025) (citing State v.

2

Motta, 66 Haw. 89, 90, 657 P.2d 1019, 1019 (1983) & State v. Wells, 78 Hawaiʻi 373, 382, 894 P.2d 70, 78 (1995)).

Here, the charges against Bekkum contained all required elements and Bekkum was not prejudiced as he knew that the State's theory of compulsion was based on a lack of consent. We therefore reverse the ICA's judgment on appeal and remand to the ICA to address Bekkum's remaining points of error on appeal.

## II. Background

### A. Complaint

On February 10, 2022, the State charged Bekkum via complaint with two counts of sexual assault in the fourth degree in violation of HRS § 707-733 (Supp. 2016).

Under HRS § 707-733(1)(a), a person commits sexual assault in the fourth degree if "[t]he person knowingly subjects another person, not married to the actor, to sexual contact by compulsion or causes another person, not married to the actor, to have sexual contact with the actor by compulsion[.]"

HRS § 707-700 defines "compulsion" as "absence of consent, or a threat, express or implied, that places a person in fear of public humiliation, property damage, or financial loss."

The complaint alleged:

> COUNT ONE: (18-020246-001)
>       That on or about the 29th day of September, 2017, in the Division of Wailuku, County of Maui, State of Hawaii, CURTIS RYAN BEKKUM did knowingly subject [CW], a person not married to him, to sexual contact by compulsion and/or cause her to have sexual contact with him by compulsion, to

3

> wit, by touching and/or grabbing her breast, thereby committing the offense of Sexual Assault in the Fourth Degree in violation of Section 707-733(1)(a) of the Hawaii Revised Statutes.
>
> COUNT TWO:  (18-020246-002)
>      That on or about the 30th day of September, 2017, in the Division of Wailuku, County of Maui, State of Hawaii, CURTIS RYAN BEKKUM did knowingly subject [CW], a person not married to him, to sexual contact by compulsion and/or cause her to have sexual contact with him by compulsion, to wit, by touching and/or pressing against her buttocks with his penis, thereby committing the offense of Sexual Assault in the Fourth Degree in violation of Section 707-733(1)(a) in the Hawaii Revised Statutes.

As can be seen, the complaint tracked the language of HRS § 707-733(1)(a) and did not include the statutory definition of compulsion.

Bekkum pled not guilty and demanded a jury trial.

## B.    Jury trial

At trial, the State's theory was that Bekkum had engaged in sexual contact without the CW's consent.  The CW was the State's only witness, whose testimony is summarized as follows.

The CW moved to Maui in 2003 and worked for a former state senator until he resigned around 2021.

In 2015, when she was in her 50s, the senator helped the CW get a job as a live-in hospice care provider for an individual in Hana.  Bekkum, who is a physician, was close friends with the senator.  The CW met Bekkum when he interviewed her to ensure she was qualified to provide the requisite hospice care.

4

The CW suffered from stenosis of the spine, which caused her pain and compromised her mobility. In the fall 2017, CW moved from Hana to Haʻikū and driving to and from work aggravated her back pain. Bekkum offered to provide her with cortisone shots, which she accepted. Bekkum administered three cortisone shots without payment.

The CW then told Bekkum she was thinking of asking her doctor for a platelet-rich plasma ("PRP") shot, in which her own blood would be drawn, a centrifuge would be used to separate out the platelets, and the platelets would be injected into the scar tissue in her back. Bekkum contacted the CW saying he was now offering PRP shots and could come to her home with to perform the procedure. The CW agreed, and on September 29, 2017, Bekkum arrived at her home around 6:00 PM.

Bekkum insisted the CW put on a paper gown, even though she did not think it was necessary. The CW then straddled a chair, and Bekkum injected a needle into her lower back. Bekkum then placed one hand under the paper gown, grabbed her breast with his right hand, and his left hand moved across her thigh and her belly into her crotch area. He said something like, "[O]h, did I hurt you?"

The CW pushed the chair onto the ground, turned to Bekkum and demanded that he leave, then went into her bedroom and locked the door. She got dressed, exited her bedroom, then went

5

to the kitchen door to let in her two large dogs. Bekkum asked her to at least let him watch her dress as a payment for his services. As he was leaving, the CW told him to bill her. Bekkum suggested there would be other things she could do to pay him back.

The next day, the CW woke up to a text message from Bekkum on her phone. She ignored it, but Bekkum continued texting her throughout the day and asked over Facebook messenger if he could come over. The CW said no. She eventually turned off her phone but then heard banging on her kitchen door. It was Bekkum, who said there was an emergency involving the senator.

Bekkum let himself in then asked her if he could check her injection site. The CW did not think it was necessary, but she allowed him to check it. Bekkum then excused himself to use the bathroom, and the CW started doing the dishes at her kitchen sink. Bekkum came up behind her and put his arms around her. He pushed his erect penis into her tailbone area. Bekkum also tried to kiss her, but she turned away and guided him out the door, then shut and locked it behind him.

The CW waited seven months to report the incidents to the police because she was afraid of retaliation and of losing her job with the senator. She eventually reported the incidents after speaking with her daughter, as well as her doctor, the Department of Commerce and Consumer Affairs, and her therapist.

6

The jury found Bekkum guilty as charged on both counts of sexual assault in the fourth degree. The circuit court sentenced Bekkum to one year of probation and thirty days imprisonment on each count, to run concurrently.

## C. ICA proceedings

Bekkum appealed his conviction, challenging for the first time the validity of the complaint.[1] He contended the complaint was defective because it did not include the statutory definition of compulsion, which he argued does not comport with its common meaning.

The State pointed out that because Bekkum challenged the validity of the 2022 complaint for the first time on appeal, the Motta/Wells "post-conviction liberal construction rule" applied. It argued that under the Motta/Wells standard, the complaint must be presumed valid and should not be vacated unless Bekkum could show prejudice or that the complaint cannot reasonably be construed to allege a crime. The State argued that the complaint was valid and that by the time Bekkum challenged the

---

[1]     Bekkum raised six other points of error: that the circuit court erred in failing to (1) enter a judgment of acquittal, (2) instruct the jury regarding the State's burden of proving timeliness beyond a reasonable doubt, and (3) instruct the jury to disregard certain hearsay testimony that was stricken and in admitting certain hearsay evidence. Bekkum also asserted that (4) his due process rights were violated due to prosecutorial misconduct, (5) his trial counsel provided ineffective assistance of counsel, and (6) the circuit court abused its discretion in denying his motion for a new trial. The ICA addressed the first two points listed above but did not address the others because it vacated Bekkum's conviction after holding the complaint was deficient. None of the points listed above are at issue in this certiorari proceeding and will not be further discussed.

7

validity of the complaint, he was fully apprised of the charges against him.

The ICA vacated Bekkum's conviction based on Bekkum's challenge to the charges. State v. Bekkum, 156 Hawaiʻi 154, 570 P.3d 1121, 2025 WL 1673691, at *4 (App. June 13, 2025) (SDO). The ICA acknowledged applicability of the Motta/Wells rule because Bekkum challenged the validity of the complaint for the first time on appeal. Id. But it ruled that "[u]nder the Motta/Wells rule, a charge will only be adequate when it provides the accused with fair notice of the offense's essential elements, which are conduct, attendant circumstances, and results of conduct." Id. (citing State v. Kauhane, 145 Hawaiʻi 362, 370, 452 P.3d 359, 367 (2019)).

The ICA concluded that the omission of the statutory definition of compulsion failed to provide Bekkum with fair notice of the charges. Id. It cited its own unpublished decision holding that "the statutory definition of 'compulsion' departs from the commonly understood definitions of the term to such an extent that charging [the defendant] in the language of the statutes failed to provide him with fair notice of the charges." Id. (quoting State v. Aledo, 145 Hawaiʻi 297, 452 P.3d 765, 2019 WL 6127474, at *3-4 (App. Nov. 18, 2019) (SDO)).

The ICA held that the failure to include the statutory definition of compulsion rendered the complaint defective and

8

ordered a remand for the circuit court to dismiss the case without prejudice.  Id.

C.    **Certiorari proceedings**

On certiorari, the State argues the ICA applied the wrong standard of review when it vacated Bekkum's conviction.  The State also contends the ICA failed to evaluate the complaint's validity in light of all the information Bekkum had prior to his appeal, including the State's proposed jury instructions that set forth the statutory definition of compulsion.

Bekkum maintains the omission of the statutory definition of compulsion rendered the complaint defective regardless of whether the ICA properly considered the record as a whole.  He argues that the complaint cannot reasonably be construed to charge a crime.

### III.  Standard of Review

"Whether a charge sets forth all the essential elements of a charged offense is a question of law, which we review under the de novo, or right/wrong standard."  State v. Baker, 146 Hawaiʻi 299, 305, 463 P.3d 956, 962 (2020) (citation omitted).

### IV.  Discussion

As set forth below, we conclude the ICA did not properly apply the Motta/Wells rule.

The statutory definition of compulsion did not add an additional element and did not need to be included in the

9

complaint.  Thus, Bekkum has failed to show that the charges against him cannot reasonably be construed to allege crimes.

Furthermore, the record demonstrates that Bekkum knew the State's theory was that Bekkum acted by compulsion because there was an absence of consent.  Thus, Bekkum also failed to show he was prejudiced by the non-inclusion of the statutory definition of compulsion.

Therefore, because Bekkum can neither show (1) that the complaint cannot reasonably be construed to allege a crime nor (2) that he was prejudiced, Kauhane, 145 Hawaiʻi at 370, 452 P.3d at 367, the ICA erred by ruling the charges must be dismissed.

**A.  The ICA applied the standard applicable to timely, early challenges instead of the Motta/Wells rule applicable to a challenge first made on appeal**

**1.  The Motta/Wells rule of liberal construction applies to this case**

When a criminal defendant challenges the sufficiency of a charge in a timely manner, an appellate court will uphold that charge if: (1) it contains the elements of the offense; and (2) it sufficiently apprises the defendant of what the defendant must be prepared to meet; in other words, the relevant inquiry is whether or not the charge has provided the accused with fair notice of an offense's essential elements.  Kauhane, 145 Hawaiʻi at 369–70, 452 P.3d at 366–67.  In addition, in a timely challenge, if a charge contains generic terms, proscribing

10

different types of conduct or different definitions in the disjunctive, then fair notice can require that the State provide specificity in the charge. State v. Jardine, 151 Hawaiʻi 96, 101, 508 P.3d 1182, 1187 (2022).

But a different standard applies where a defendant challenges charges after conviction. In a post-conviction challenge to a charge, the charge is presumed valid and will be invalidated only if the defendant can show (1) the charge cannot reasonably be construed to allege a crime; or (2) the defendant was prejudiced:

> Under the Motta/Wells rule, charges challenged for the first time on appeal are presumed valid. Accordingly, we will only vacate a defendant's conviction under this standard if the defendant can show: (1) that the charge cannot reasonably be construed to allege a crime; or (2) that the defendant was prejudiced.

Kauhane, 145 Hawaiʻi at 370, 452 P.3d at 367 (cleaned up).

Here, because Bekkum challenged the sufficiency of the complaint for the first time on appeal, the Motta/Wells rule applies. Therefore, the only bases for a challenge are that (1) the charges cannot reasonably be construed to allege crimes; or (2) that Bekkum was prejudiced. But the ICA invalidated the charges on a different basis. It stated that "[u]nder the Motta/Wells rule, a charge will only be adequate when it provides the accused with fair notice of the offense's essential elements, which are conduct, attendant circumstances, and results of conduct[,]" Bekkum, 2025 WL 1673691, at *4, and cited

11

to Kauhane at 145 Hawai'i at 370, 452 P.3d at 367. The ICA cited to a passage from Kauhane that applies to timely challenges to charges.

However, as stated in Kauhane, it is only when a charge is timely challenged that a court is to evaluate whether the charge provides "fair notice of an offense's essential elements." In other words, even if a charge contains all essential elements, it is possible that the charge would not provide "fair notice."

But under the Motta/Wells rule governing post-conviction challenges, the inquiry is whether a charge can reasonably be construed to allege a crime, which only requires that all essential elements be included in the charge. The Motta/Wells rule does not impose the "fair notice" requirement of Kauhane because when a defendant has been convicted, whether through a trial or by change of plea, the defendant is presumed to have had "fair notice" of the charge. In other words, the Motta/Wells rule is designed to discourage "technical claims of invalidity" first raised after trial. Motta, 66 Haw. at 91, 657 P.2d at 1020. Here, the ICA may have conflated the standard applicable to timely, early challenges to a criminal charge with the standard governing post-conviction challenges.

But as this was a challenge raised for the first time on appeal, the Motta/Wells rule applies. Neither criterion for setting aside the charge exists here, (1) that the charge cannot

12

reasonably be construed to allege a crime, or (2) that the defendant was prejudiced. Therefore, the ICA erred by ordering that the charges be dismissed.

> **2. Bekkum has failed to show that the charges against him cannot reasonably be construed to allege crimes because the statutory definition of compulsion did not create an additional element**

Regardless of when a criminal charge is challenged, there are basic requirements it must fulfill to "reasonably be construed to allege a crime," as required by the first prong of the Motta/Wells analysis. As this court stated in State v. Jendrusch, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977):

> The accusation must sufficiently allege all of the essential elements of the offense charged. This requirement obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint, and the omission of an essential element of the crime charged is a defect in substance rather than of form. A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process.

58 Haw. at 281, 567 P2d at 1244 (cleaned up). Thus, even under the Motta/Wells rule, a charge must include all essential elements of the crime charged.

Under HRS § 702-205, the elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct as are specified by the definition of the offense. "Attendant circumstances" are any circumstances defined in an offense that are neither conduct nor the results of conduct. State v. Aiwohi, 109 Hawai'i 115, 127, 123 P.3d 1210, 1222 (2005). In addition, requisite states of mind must also be included in

13

criminal charges.  State v. Garcia, 152 Hawaiʻi 3, 7, 518 P.3d 1153, 1157 (2022).

Thus, under the Motta/Wells rule, a charge need only contain requisite elements to "reasonably be construed to allege a crime."  The ICA deemed the charges invalid because they did not include the statutory definition of "compulsion."  But Motta/Wells only requires that charges include all essential elements.  Thus, a statutory definition need only be included if it actually creates an additional element.

Different standards apply when a charge is challenged in a timely manner.  As we stated in Garcia, which involved a timely challenge:

> Notice plays the central role in evaluating the sufficiency of a charging document. Article I, section 5 of the Hawaiʻi Constitution (right to due process) and article I, section 14 of the Hawaiʻi Constitution (right "to be informed of the nature and cause of the accusation") inspire the criteria we use to measure the adequacy of a charge: charging documents must include the elements of an offense and sufficiently describe the nature and cause of the accusation. See, e.g., State v. Wheeler, 121 Hawaiʻi 383, 391, 219 P.3d 1170, 1178 (2009) (holding that "the sufficiency of the charging instrument is measured, inter alia, by whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what [they] must be prepared to meet") (cleaned up).

Garcia, 152 Hawaiʻi at 6, 518 P.3d at 1156.

Generally, "[w]hen a criminal defendant challenges the sufficiency of a charge in a timely manner, an appellate court will uphold that charge if: (1) it contains the elements of the offense; and (2) it sufficiently apprises the defendant of what

14

the defendant must be prepared to meet; [i]n other words, the relevant inquiry is whether or not the charge has provided the accused with <u>fair notice of the offense's essential elements</u>." <u>Kauhane</u>, 145 Hawaiʻi at 369–70, 452 P.3d at 366–67 (emphasis added) (cleaned up). And if a charging document tracks an offense's statutory language, then the State does not need to "load it with definitions of words defined elsewhere." <u>Garcia</u>, 152 Hawaiʻi at 8, 518 P.3d at 1158. But if a charge contains generic terms, proscribing different types of conduct or different definitions in the disjunctive, then fair notice can require that the State provide specificity in the charge. <u>Jardine</u>, 151 Hawaiʻi at 101, 508 P.3d at 1187.[2]

But this case involves a post-conviction challenge. Here, the charges against Bekkum tracked the statutory definition of

---

[2] In <u>State v. Kaakimaka</u>, 156 Hawaiʻi 302, 310, 574 P.3d 767, 775 (2025), we stated that in a timely challenge, "the State needs to provide the statutory definition of a term only when it creates an additional essential element of the offense, <u>and</u> the term itself does not provide a person of common understanding with fair notice of that element." (emphasis added). In <u>Kaakimaka</u>, we held that (1) although "in any private place" is an attendant circumstances element of the charged offense, the statutory definition of "private place" does not create an additional attendant circumstance element; (2) "private place" is not a generic term requiring further particulars; and (3) based on other information provided up to the time of his motion to dismiss, Kaakimaka was informed of the nature and cause of the accusation against him and had actual knowledge of what was alleged to be the "private place." 156 Hawaiʻi at 305, 574 P.3d at 770.

Although it would not have changed the result in the case, <u>Kaakimaka</u> erroneously used "<u>and</u>" instead of "<u>or</u>." In a timely challenge, even if a charge includes all elements, those elements must also provide fair notice. This error would not have changed the result in <u>Kaakimaka</u>, as we specifically held that the defendant was informed of the nature and cause of the accusation against him and had actual knowledge of what was alleged to be the "private place" by the time he filed his motion to dismiss.

15

sexual assault in the fourth degree and included all requisite elements.  The charges included the (1) conduct (touching and/or grabbing breast/touching and/or pressing against her buttocks with his penis), (2) the attendant circumstance (by compulsion); and (3) results of conduct (sexual contact); as well as the state of mind (knowingly).  Critically, the statutory definition of compulsion did not create an additional element; "by compulsion" itself was the attendant circumstance element.

In deeming the charges against Bekkum insufficient, the ICA cited its own earlier unpublished summary disposition order in State v. Aledo, 2019 WL 3127474.  But Aledo involved a timely challenge to indictment.  2019 WL 3127474, at *2.  In Aledo, the ICA concluded that the dictionary definition of "compulsion" did not "rise to the level of specificity of the statutory definition of 'compulsion' under HRS § 707-700."  2019 WL 3127474, *4.  And in a timely challenge, the relevant inquiry is whether or not the charge has provided the accused with fair notice of an offense's essential elements.

But the "fair notice" requirement does not apply to a post-conviction challenge.  In a post-conviction challenge governed by the Motta/Wells rule, a charge must include the statutory definition of a term only if it creates an additional essential element of the offense; in post-conviction challenges, fair

16

notice is presumed. Therefore, the ICA erred by relying on its holding in Aledo in this post-conviction challenge.

Here, the statutory definition of compulsion did not create an additional essential element. The definition did not create an additional attendant circumstance, as in Wheeler (that the defendant's conduct occurred upon a public way, street, road, or highway). 121 Hawaiʻi at 392, 219 P.3d at 1179. It did not create an additional result of conduct, as in Kauhane (of rendering a highway impassable without unreasonable inconvenience or hazard). 145 Hawaiʻi at 371, 452 P.3d at 368.

To summarize, under the Motta/Wells rule governing post-conviction challenges to criminal charges, a defendant's conviction can only be vacated if the defendant can show (1) that the charge cannot reasonably be construed to allege a crime; or (2) that the defendant was prejudiced. Bekkum has failed to show that the charges against him cannot reasonably be construed to allege crimes. As explained next, Bekkum has also failed to show he was prejudiced by the non-inclusion of the statutory definition of compulsion. Therefore, the charges should have been upheld in this post-conviction challenge.

**3. Bekkum has also failed to show he was prejudiced by the non-inclusion of the statutory definition of compulsion in the complaint**

A criminal charge ensures that an accused's rights under the Hawaiʻi Constitution are upheld. State v. Nesmith, 127

17

Hawaiʻi 48, 52, 276 P.3d 617, 621 (2012).  One of those fundamental rights is enshrined in Article I, Section 14, which mandates that "the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]"  Haw. Const. Art. I, § 14.  Therefore, "[n]otice plays a central role in our analyses of charging documents' adequacy."  State v. Van Blyenburg, 152 Hawaiʻi 66, 74, 520 P.3d 264, 272 (2022).

But the notice requirement is not meant "to facilitate obtuse technical arguments about . . . what complex statutory definitions should or should not be included in a charging document.  It is, rather, to safeguard an accused's fundamental right to know what they must defend against to avoid conviction."  Id.  And in post-conviction challenges, fair notice of charges is presumed.

Here, Bekkum did not challenge the charges until he appealed his convictions.  He knew what he had to defend against to avoid conviction.  He knew the State's theory was that he had engaged in sexual contact by compulsion on the grounds the CW had not consented to the sexual contact alleged in the charges.  In fact, he requested standard jury instruction 7.05 regarding "consent," which generally provides that a CW's consent is a defense to a prosecution.

Also, in the ICA and in this court, Bekkum never claimed he did not know the State's theory was that absence of consent

18

constituted "by compulsion" or that he was prejudiced by the non-inclusion of the statutory definition of compulsion in the charges against him. His challenges to the complaint were not based on an alleged violation of his right to know what he had to defend against to avoid conviction. Rather, he raised an obtuse, technical post-conviction challenge.

Bekkum therefore failed to show he was prejudiced by the non-inclusion of the statutory definition of compulsion in the complaint.

Hence, his challenge to the complaint fails under the Motta/Wells rule.

### V. Conclusion

For these reasons, we reverse the ICA's July 17, 2025 judgment on appeal and remand this case to the ICA to address Bekkum's remaining points of error on appeal.

Richard B. Rost                    /s/ Vladimir P. Devens
for petitioner
                                   /s/ Sabrina S. McKenna
Hayden Aluli
for respondent                     /s/ Todd W. Eddins
                                                              
                                   /s/ Lisa M. Ginoza

                                   /s/ Clarissa Y. Malinao

19